UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WANDA PERNELL-HARRIS,

           Plaintiff,

v.

OAKLAND COMMUNITY COLLEGE,

           Defendant.

_____/

Case No. 14-14621

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

### ORDER PARTIALLY GRANTING AND PARTIALLY DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [30]

Plaintiff Wanda Pernell-Harris, now retired, formerly worked for Defendant Oakland Community College as an advocate for disabled students.  In January 2013 she accused Defendant of discriminating against disabled students by providing her office inadequate resources.  She claims that Defendant retaliated against her for this complaint, in violation of the Americans with Disabilities Act (ADA), the Rehabilitation Act, and Michigan's Persons with Disabilities Civil Rights Act (MPWDCRA).  On April 15, 2016, Defendant filed a Motion for Summary Judgment [Dkt. #30].  On May 23, 2016, Plaintiff filed a Response [37], to which Defendant filed a Reply [42] on June 20, 2016.  At the conclusion of a hearing held on July 12, 2016, the Court took the motion under advisement.

1

For the reasons stated below, Defendant's Motion for Summary Judgment [30] is **DENIED WITHOUT PREJUDICE** to the extent that Plaintiff's claims are based on Defendant's failure to investigate her November 2013 complaint of harassment, and otherwise **GRANTED**.  The Court will set a deadline for a renewed motion for summary judgment after the expiration of the parties' opportunity under the Local Rules to move for reconsideration of this Order.

### FACTUAL BACKGROUND

Plaintiff Wanda Pernell-Harris was employed by Defendant Oakland Community College for twenty-five years as an advocate for students with disabilities.  During the times relevant to this suit, the disability advocacy office was called ACCESS, and Plaintiff worked as the ACCESS Coordinator at Defendant's Southfield campus.  Plaintiff retired on April 30, 2016, during the pendency of this lawsuit.

On January 22, 2013, Plaintiff spoke at a meeting of Defendant's Board of Trustees and distributed a letter accusing Defendant of illegally discriminating against students with disabilities by failing to provide the Southfield ACCESS office with adequate resources, including a full-time secretary.  Shortly thereafter, administrators scheduled a meeting with Plaintiff.  Plaintiff asked Mary Haze, an administrative professional, if there was specific information she would like

Plaintiff to bring to the meeting.  Haze responded, "No. We would just like to get a clearer understanding of your issues."

On February 25, 2013, Plaintiff attended the scheduled meeting with Steven Reif (president of the Southfield and Royal Oak campuses), Cathey Maze (assistant vice chancellor), Mary Ann Sheble (a dean in charge of all ACCESS offices), Bill MacQueen (Human Resources vice chancellor), Gary Casey (director of employee relations), and—according to Plaintiff—Margaret Carroll (director of personnel services).  Plaintiff testified that she had no chance to talk about her presentation to the board, and that nobody asked her for more information.  She testified that Casey and Carroll accused her of doing things outside of her job description and acting like a social worker.  Carroll denied attending the meeting. Casey denied speaking at the meeting, testified that Carroll was not present, and testified that Plaintiff was asked to provide information to support her request for full-time support staff.  Plaintiff and Sheble both testified that Sheble hugged Plaintiff a day or two later in consolation for the way the meeting went.  However, Sheble contradicted Plaintiff's account of the meeting; she testified that Carroll was not present, that Plaintiff's concerns were discussed, that she and the others were frustrated because they did not understand what Plaintiff was trying to communicate, and that she asked Plaintiff to provide the administrators with an advocacy group newsletter she cited.

Plaintiff claims that coworkers treated her differently after her presentation. She testified that after she made her presentation, coworkers who were formerly welcoming became merely cordial and made their comments "short." She further testified that after her presentation, unspecified people stopped asking her to conduct presentations (including an annual presentation to new faculty) and participate in committees and meetings. She testified that Beverly Stanbrough, dean at the Royal Oak campus, chose Plaintiff's Royal Oak counterpart, rather than Plaintiff, to be on a committee involving prospective students.

Marcia Kosovec (ACCESS Coordinator at the Royal Oak campus), with whom Plaintiff was friendly, testified that she also observed a change in the frequency with which people would seek Plaintiff's opinion or participation. Kosovec testified that she was not sure if the change was on the other people's end or on Plaintiff's end. She testified that Plaintiff stopped wanting to participate and to share her opinion, and that Plaintiff attributed this change to feeling attacked and devalued by Defendant. Kosovec further testified that she attended a meeting with two deans, David Matthews and Lloyd Crews, during which the deans made derogatory remarks about Plaintiff, including asking "who does she think she is." She testified that she did not know whether their comments were connected to Plaintiff's complaint.

Plaintiff testified that on the morning of her deposition, she spoke with Letyna Roberts, Defendant's former Manager of State and Federal Funding.  She testified that Roberts told her that Phil Hale (a dean) instructed Roberts to spend less time with Plaintiff because people were angered by her presentation to the board.  She further testified that Roberts told her that she had heard from Dale Rohrbach (ACCESS Coordinator at the Orchard Ridge Campus) that he had heard from Tim Walter (a dean at the Orchard Ridge campus) that Jackie Shadko (president of the Orchard Ridge campus) had instructed Walter to instruct Rohrbach to limit his time with Plaintiff.  Plaintiff also testified that Debbie Fiott, an employee in Defendant's research department, told her that she had heard from unspecified individuals that she should be careful about associating with Plaintiff.

In February 2013, a student asked her instructor for an extension on an assignment because she was being harassed by a former instructor, Gina Fournier. Plaintiff sent the instructor an e-mail in support of the student's request.  Over a month later, Plaintiff forwarded that e-mail to dean Tony Ingram, referring (without elaboration) to "the extremely stressful condition that [the student] had to endure from [Defendant's] mishandling of the Gina Fournier situation."  Ingram forward Plaintiff's e-mail to another recipient, who forwarded it to yet another recipient, who forwarded it to Gary Casey (among others).  Casey, as director of employee relations, had been involved in an extensive process of investigating

complaints against Fournier from her colleagues, which culminated in Fournier's suspension and resignation.  On April 2, 2013, he sent Plaintiff and others an e-mail stating that her reference to the mishandling was a "gross misrepresentation" because "each step of this long process" had been handled appropriately.  He asked her to "please check the facts first" in the future.  Plaintiff responded to clarify that when she spoke of Defendant mishandling the situation, she meant that a college official had inappropriately forwarded the harassed student's e-mail complaining about Fournier to Fournier herself, and Defendant had failed to provide escort services for the student as promised.

In summer 2013 Defendant was audited by Plante Moran PLLC.  On July 12 2013, an auditor e-mailed dean Phil Hale, asking for information to explain why two students had been awarded financial aid despite certain facts suggesting they were not eligible.  Hale forwarded the questions to Mary Ann Sheble, who forwarded them to Plaintiff.  Plaintiff provided a response, attempting to explain that the students qualified under an exception for extenuating circumstances, and asked Hale and Sheble to let her know if they needed additional information.  Hale e-mailed Sheble and said that Plaintiff's response seemed inadequate to satisfy the auditors because it "says what happened but doesn't address the policy issues and why they were ignored."  Sheble responded to Hale and Plaintiff, attempting to clarify Plaintiff's explanation and asking Plaintiff to supply additional information

that the auditors might need.  Hale then responded to Plaintiff's earlier e-mail, saying he needed to know "why the awards didn't follow procedures."  Plaintiff testified that she considered this a personal attack in part because the auditor's questions concerned eligibility governed by financial aid "rules," but Hale accused her of violating "policy."  She conceded that following up on the auditors' questions was part of Hale's job, but objected to the manner in which he did so.  She responded to his e-mail, providing further explanation and protesting his "false accusations and insinuations."  Sheble replied, assuring Plaintiff that she and Hale were just seeking information for the auditors rather than accusing her of making inappropriate awards, and reminding Plaintiff that she had asked for additional information that Plaintiff failed to include in her follow-up explanation.  Plaintiff replied with the requested information.  Sheble thanked her and reiterated that she and Hale were not judging her decisions.

On October 31, 2013, Plaintiff met with Bill MacQueen, vice chancellor of Human Resources, and Margaret Carroll, the director of Personnel Services.  There is no evidence directly addressing what Plaintiff and MacQueen discussed, prior to the meeting, concerning who would attend the meeting and what would be discussed.  Plaintiff testified that she expected to meet only with MacQueen, and that she asked him why Carroll was present.  She testified that MacQueen responded that "we made a decision that we're going to always have someone."

MacQueen testified that he invited Carroll because he usually did not meet with people one-on-one and Carroll was knowledgeable about benefits.   Plaintiff testified that she believed his decision to have Carroll present was retaliatory because she wanted to discuss her alleged harassment, in which Carroll had allegedly participated by accusing Plaintiff of acting outside the scope of her job at the February meeting (seven months earlier).   Plaintiff conceded that neither MacQueen nor Carroll said anything negative to her during this meeting.   She testified that she felt too uncomfortable to discuss her harassment with Carroll present, and that she "fell apart" and had a crying spell.   She testified that MacQueen and Carroll told her to take medical leave.   MacQueen and Carroll testified that Plaintiff said she could not continue working due to stress, and that they responded by explaining her options for leave.

On November 18, 2013, Plaintiff sent MacQueen an e-mail following up on the October meeting.   She stated that she had informed MacQueen at the meeting that she was suffering from disabilities due to the stress of serving the disabled student population without full-time support staff.   She further said that they had agreed she needed to take a leave to reduce her stress.   She recounted her January 2013 request for full-time staff and stated (without elaboration) that she "received continued personal attacks, harassment and bullying" for protesting her office's inadequate resources.   She stated that she could "no longer work in a hostile work

environment."  She proposed, as "an accommodation and a resolution to this matter," that she be allowed to retire two years early and receive a buy-out equivalent to one year's salary.  Defendant was offering such a buy-out to some other employees, but Plaintiff conceded at her deposition that employees in her classification weren't eligible.  Defendant didn't grant Plaintiff's requests for early retirement or a buy-out.  MacQueen and Casey conceded at their depositions that they didn't investigate the harassment claim in Plaintiff's e-mail.

On December 6, 2013, Plaintiff attended a meeting with Gary Casey, Mary Ann Sheble, and Lori Przymusinski (dean of nursing) to address a nursing student's complaint.  The student had received accommodations in a class, including the option to take an exam, with extra time, in Plaintiff's office instead of in the classroom.  After failing the class, the student complained that the instructor held a review session at the same time she was taking the exam, depriving her of equal opportunities for review.  Plaintiff participated in a series of e-mails in which she and Przymusinski disagreed about the proper process for addressing the student's complaint.  The December meeting was scheduled to address the situation.  It is undisputed that Casey and Plaintiff had a disagreement during the meeting.  Plaintiff testified that Casey yelled at her and told her she did not know what she was talking about.  Casey testified that he merely opposed Plaintiff's alleged statement to the effect that faculty should personally recognize

when students need accommodations and offer accommodations on the spot. Sheble testified that the disagreement concerned Plaintiff's opinion that the instructor should have realized from a student's e-mail that the student was asking for accommodations. Sheble testified that although neither Plaintiff nor Casey backed down, she thought the disagreement ended amicably.

Plaintiff went on medical leave starting March 3, 2014. She returned to work on June 15, 2015, but worked at the Orchard Ridge campus instead of the Southfield campus. She retired on April 30, 2016.

### SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must construe the evidence and all reasonable inferences

drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Inadmissible hearsay evidence cannot defeat summary judgment. *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (citing *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007)).

## ANALYSIS

Plaintiff brings retaliation claims under the ADA, the Rehabilitation Act, and the MPWDCRA. As the parties appear to agree, all three claims may be analyzed together under the standards applicable to a Title VII retaliation claim. *Johnson v. Cleveland City School Dist.*, 344 F. App'x 104, 113 (6th Cir. 2009) (citing *Penny v. United Parcel Serv.*, 128 F.3d 408, 417 (6th Cir. 1997)) (ADA and Title VII); *A.C. ex rel. J.C. v. Shelby County Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir. 2012) (citing *Andrews v. Ohio*, 104 F.3d 803, 807 (6th Cir.1997)) (ADA and Rehabilitation Act); *Marotta v. Ford Motor Co.*, 119 F. Supp. 3d 676, 697 (E.D. Mich. 2015) (citing *Donald v. Sybra*, 667 F.3d 757, 764 (6th Cir. 2012)) (ADA and MPWDCRA). Because Plaintiff offers only circumstantial evidence of retaliation, the *McDonnell Douglas* burden-shifting framework applies. *See E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015) (en banc). If Plaintiff establishes a prima facie case, the burden shifts to Defendant to articulate nonretaliatory reasons for the challenged actions, after which the burden shifts back to Plaintiff to show

that those reasons are a pretext for retaliation.  *See id.* (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 515 (1993)).

A typical prima facie case of retaliation requires Plaintiff to show that (1) she engaged in protected activity; (2) Defendant knew of her protected activity; (3) Defendant took a materially adverse action against Plaintiff; and (4) Plaintiff's protected activity was a but-for cause of Defendant's materially adverse action. *Laster v. City of Kalamazoo*, 746 F.3d 714, 730–31 (6th Cir. 2014) (citing *Jones v. Johanns*, 264 F. App'x 463, 466 (6th Cir. 2007)).  A "materially adverse" action is one that well might dissuade a reasonable employee from complaining of discrimination.  *Id.* at 719 (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006)).

Rather than show that Defendant took a materially adverse action against her, Plaintiff may alternatively show that she was subjected to materially adverse harassment by a supervisor.  *See id.* at 730 n.5 (citing *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 595 (6th Cir. 2007)).  A "supervisor" in the context of vicarious liability for harassment is someone empowered by the employer to take tangible employment action against the victim.  *Vance v. Ball State University*, 133 S. Ct. 2434, 2439 (2012).  Plaintiff may alternatively show that (1) she was subjected to materially adverse harassment by a non-supervisor coworker, (2) "supervisors or members of management have actual or constructive knowledge of

the coworker's retaliatory behavior," and (3) "supervisors or members of management have condoned, tolerated, or encouraged the acts of retaliation, or have responded to [her] complaints so inadequately that the response manifests indifference or unreasonableness under the circumstances." *Laster*, 746 F.3d at 732 (citing *Hawkins v. Anheuser–Busch, Inc.*, 517 F.3d 321, 346 (6th Cir. 2008)).

It is undisputed that Plaintiff's January 2013 presentation to the board was protected activity and that Defendant knew of this activity. Plaintiff argues that she was subjected to materially adverse retaliatory harassment by various employees of Defendant. Neither party addresses whether any of the alleged harassers qualify as "supervisors" and, if not, whether Plaintiff has made the negligence-like showings required to hold Defendant liable for harassment by nonsupervisor coworkers. Defendant's arguments focus on whether the challenged actions are materially adverse and, to a lesser extent, on whether Plaintiff has raised a genuine issue of material fact regarding causation. Before turning to those topics, the Court will address Defendant's argument that some of Plaintiff's evidence cannot be considered in resolving this motion because the evidence is inadmissible hearsay.

## I.    Hearsay

Defendant argues that some of Plaintiff's evidence is inadmissible hearsay. Hearsay evidence is inadmissible unless it falls within certain exceptions. FED R.

EVID. 802.  An out-of-court statement is hearsay if offered by a party to prove the truth of the matter asserted in the statement, unless it falls within certain exceptions.  *See* FED. R. EVID. 801(c), (d).  Pursuant to one exception, an out-of-court statement is not hearsay, even if offered to prove the truth of the matter asserted, if it is offered against a party and made by that party's employee during the employment relationship and on a matter within the relationship's scope.  FED. R. EVID. 801(d)(2)(D).

The Sixth Circuit has indicated that Rule 801(d)(2)(D)'s requirement that the statement concern a matter within the scope of the declarant's employment reflects "a critical difference between making a statement while one is an employee and having the actual or implied authority to make such a statement on behalf of your employer."  *Jacklyn v. Schering-Plough Healthcare Products Sales Corp.*, 176 F.3d 921, 928 (6th Cir. 1999).  In *Jacklyn*, the plaintiff swore in an affidavit that when she asked her district manager why she was having trouble with her central regional manager, he answered that she was the only woman reporting to the central regional manager.  *Id.* at 926–27.  The Sixth Circuit held that the district manager's statement to the plaintiff did not fall within the scope of his employment relationship, even though he was involved in supervising her and evaluating her performance, because he was not involved in the allegedly discriminatory treatment.  *Id.* at 928; *see also Conley v. City of Findlay*, 266 F. App'x 400, 411

(6th Cir. 2008) (Moore, J., dissenting) (explaining that the *Jacklyn* court "looked at the authority the declarant had over the matter he was addressing"). In a pair of companion cases, the plaintiffs' coworker told them that their manager had said that she changed the plaintiffs' shifts, obstructing their ability to carpool together, because they were both Black and "inappropriate." *Garrett v. Southwestern Medical Clinic*, 631 F. App'x 351, 353, 358 (6th Cir. 2015); *Maben v. Southwestern Medical Clinic*, 630 F. App'x 438, 444 (6th Cir. 2015). The Sixth Circuit held Rule 801(d)(2)(D) inapplicable because the coworker's formal and implicit job duties did not include input into personnel decisions or relaying comments from management. *Garrett*, 631 F. App'x at 358; *Maben*, 630 F. App'x at 445. In contrast, the Sixth Circuit has held in a published opinion that because an acting Human Resources Director's job entailed overseeing terminations, he was speaking on a matter within the scope of his employment relationship when he told another employee that higher management had confessed a plan to get rid of certain employees. *Back v. Nestle USA, Inc*., 694 F.3d 571, 577 (6th Cir. 2012); *see also Carter v. Univ. of Toledo*, 349 F.3d 269, 272, 276 (6th Cir. 2003) (holding university vice provost's statement that higher administrators were trying to get rid of Black professors fell within the scope of his employment relationship because his job entailed ensuring compliance with affirmative action requirements).

Here, Plaintiff testified that Debbie Fiott, an employee in Defendant's research department, told her that unspecified individuals advised her to be careful about associating with Plaintiff.  Plaintiff further testified that she told Lloyd Crews, former dean of Defendant's Southfield and Royal Oak campuses, that she felt people were treating her differently, and that Crews responded that "they" were angry at her because of her board presentation.  Finally, Plaintiff testified that Tony Ingram, another former dean, told her that "some people," apparently including the administrators at the January 2013 board meeting, had been angered by her presentation.  Plaintiff offers these statements to prove the truth of the matters asserted (i.e., that people actually warned Fiott against associating with Plaintiff, that people were angered by her presentation, and that people acted on their anger by treating her differently in an unspecified manner).  She offers no evidence, however, that these declarants' jobs entailed any responsibility or authority over the subject matter of these statements.  The Court concludes that Rule 801(d)(2)(D) is inapplicable to these statements because they do not concern matters within the scope of the declarants' employment relationships.  Because Plaintiff does not invoke any other hearsay exception, the Court concludes the statements are inadmissible hearsay.

Plaintiff also testified that she spoke with Defendant's former Manager of State and Federal Funding, Letyna Roberts, on the morning of her deposition.  She

testified that Roberts told her that Phil Hale and Dale Rohrbach had separately told Roberts that Jackie Shadko, president of Defendant's Orchard Ridge campus, had instructed them to limit their time with Plaintiff and/or to instruct their subordinates to do so. Plaintiff offers Roberts' statements to prove the truth of the matter asserted (i.e, to prove that Hale and Rohrbach really made those statements to Roberts). Plaintiff testified that Roberts was no longer employed by Defendant on the day of Plaintiff's deposition, when Roberts made these statements. Because Roberts' statements to Plaintiff were made after her employment relationship ended, they cannot fall under the 801(d)(2)(D) exception. As noted, Plaintiff has invoked no other hearsay exception. The Court therefore concludes that Roberts' statements are inadmissible hearsay.

Because the evidence addressed in this section is inadmissible hearsay, Plaintiff cannot rely on it in opposition to summary judgment. *Alexander*, 576 F.3d at 558 (citing *Alpert*, 481 F.3d at 409).

## II.    Material adversity

Defendant argues that the alleged retaliation is not actionable because, even if it occurred as alleged, it was not materially adverse. The alleged acts of retaliatory harassment fall into three categories: (1) criticisms of Plaintiff; (2) exclusion of Plaintiff by coworkers; and (3) Defendant's failure to investigate

Plaintiff's November 2013 complaint of retaliatory harassment. The Court will address each in turn.

## A.    Criticisms

Plaintiff's evidence of harassment consists largely of evidence that various people criticized her on several occasions over the span of ten months. Specifically, Gary Casey and Margaret Caroll allegedly told Plaintiff in February 2013 that she was acting outside of her job description and acting like a social worker; Casey told her in April 2013 that her reference to Defendant mishandling the situation with Gina Fournier was a "gross misrepresentation," and told her to check the facts first on future occasions; Phil Hale asked Plaintiff in July 2013 to further explain her approval of two financial aid awards that an auditor had questioned as possibly in violation of eligibility rules; David Matthews and Lloyd Crews allegedly disparaged Plaintiff behind her back sometime in 2013, to the effect of "who does she think she is;" and Casey disagreed with Plaintiff about faculty duties under the ADA in December 2013, allegedly yelling at her and saying she did not know what she was talking about.

These criticisms amount to the type of workplace personality conflicts that fall short of the "materially adverse" standard. In setting forth the standard, the Supreme Court made clear that it does not immunize an employee complaining of discrimination "from those petty slights or minor annoyances that often take place

at work." *Burlington*, 548 U.S. at 68.  Accordingly, the Sixth Circuit has found

several examples of confrontational or insulting behavior insufficiently adverse to

be actionable.  *Kurtz v. McHugh*, 423 F. App'x 572, 574, 579 (6th Cir. 2011)

(holding that supervisor did not subject plaintiff to materially adverse action by

hiding recycle bin that plaintiff left unattended on unscheduled break, failing to

reveal the bin for several days even after plaintiff made announcement seeking its

return, and accusing plaintiff of being untrustworthy in connection with the

incident); *Hunter v. Secretary of U.S. Army*, 565 F.3d 986, 996–97 (6th Cir. 2009)

(holding that supervisor did not subject plaintiff to materially adverse action by

holding up one of plaintiff's work packages for a week on the grounds that it

required more information or by telling plaintiff during a team meeting that any

high school kid could do his job); *Vaughn v. Louisville Water Co.*, 302 F. App'x

337, 340–42, 348–49 (6th Cir. 2008) (holding that coworker did not subject

plaintiff to materially adverse action by expressing anger to her on isolated

incidents, including incidents in which he slammed his hands on the table at her,

followed her out of the office on foot and in his car while staring at her, and stared

at her in an intimidating manner for the duration of a party); *Michael v. Caterpillar

Fin. Servs. Corp.*, 496 F.3d 584, 590, 594 (6th Cir. 2007) (citing *Trepka v. Bd. of

Educ.*, 28 F. App'x 455, 461 (6th Cir. 2002)) (stating, in dicta, that manager did

not subject plaintiff to materially adverse action by interrupting meeting to

aggressively remind plaintiff that she was late for separate meeting with the manager, and by proceeding to point finger in plaintiff's face, get very close to plaintiff, jump up and down in her chair, and threaten that plaintiff would pay for arriving late to their meeting). The behavior that Plaintiff challenges is no more severe than the behavior in these cases.

Plaintiff appears to construe some of the criticisms as criticisms of her job performance. The Sixth Circuit has ruled that a negative employment evaluation is generally not materially adverse if it does not reduce the employee's compensation or potential for professional advancement. *Blizzard v. Marion Technical College*, 698 F.3d 275, 290 (6th Cir. 2012) (citing *James v. Metro. Gov't of Nashville*, 243 F. App'x 74, 79 (6th Cir. 2007)); *see also E.E.O.C.*, 782 F.3d at 768 (citing *Keever v. City of Middletown*, 145 F.3d 809, 813 (6th Cir. 1998)) (acknowledging that a superior's conversation with an employee about the employee's performance does not constitute harassment simply because it causes the employee distress). Here, Plaintiff not only fails to allege that any criticism of her performance had a professional impact, but also fails to allege that she was criticized in any formal evaluation.

Plaintiff appears to argue that the *cumulative* effect of the criticisms is materially adverse. Given the mild and informal nature of the criticisms, the fact that one incident occurred when Plaintiff was not present, and the fact that the

incidents occurred only occasionally over the span of ten months, the Court disagrees.

### B.     Exclusion

Plaintiff testified in vague terms that after her January 2013 presentation, she received fewer invitations from coworkers to conduct presentations and work on committees.  She provided only two concrete examples.  First, she testified that a dean at Defendant's Royal Oak campus chose Plaintiff's Royal Oak counterpart, rather than Plaintiff, to serve on a committee involving prospective students.  Second, she testified that she was not invited to present at an annual orientation for new faculty, as she had been invited prior to her January 2013 presentation.

When setting forth the material adversity standard in *Burlington*, the Supreme Court implied that social exclusion will generally not be materially adverse if it does not risk harm to the plaintiff's professional standing.  *See Burlington*, 548 U.S. at 69 (explaining that "excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement" may be materially adverse, but a "supervisor's refusal to invite an employee to lunch" generally is not); *id.* at 68 (quoting 1 B. LINDEMANN & P. GROSSMAN, EMPLOYMENT DISCRIMINATION LAW 669 (3d ed.1996)) (quoting the treatise's reference to "snubbing by supervisors and co-workers" in support of the rule that "petty slights or minor annoyances" are not actionable).  The Sixth Circuit

has rejected plaintiffs' arguments that their exclusion from meetings and events was materially adverse. *Finley v. City of Trotwood*, 503 F. App'x 449, 454 (6th Cir. 2012) (citing *Moore v. Abbott Labs.*, 780 F. Supp. 2d 600, 620–21 (S.D. Ohio 2011) (holding plaintiff's exclusion from meetings not materially adverse); *Cecil v. Louisville Water Co.*, 301 F. App'x 490, 501 (6th Cir. 2008) (holding plaintiff's exclusion from a meeting and from a plant tour not materially adverse). The Sixth Circuit has also held that a court security officer's coworkers did not subject her to a materially adverse action by physically avoiding her (leaving rooms on several occasions immediately after she entered or after discovering her present). *Wierengo v. Akal Sec., Inc.*, 580 F. App'x 364, 367–68, 373 (6th Cir. 2014) (citing *Creggett v. Jefferson Cnty. Bd. of Educ.*, 491 F. App'x 561, 569 (6th Cir. 2012)).

The Court concludes that Plaintiff has not produced evidence of materially adverse exclusion. Her only specific testimony on this point concerns a failure to invite her to participate on a committee involving prospective students and to present at a faculty orientation. There is no evidence that the committee or orientation were significant to Plaintiff's professional standing. Plaintiff's more general testimony about social exclusion does not provide any details sufficient to establish that the exclusion rose above the level of "petty slights or minor annoyances."

### C.     Failure to investigate

Plaintiff sent Bill MacQueen an e-mail in November 2013, in which she stated—among other things, and without elaboration—that she had "received continued personal attacks, harassment and bullying" after her January presentation and that she could "no longer work in a hostile work environment." MacQueen shared the e-mail with Gary Casey, the Human Resources official most responsible for investigating such complaints.  MacQueen and Casey conceded at their depositions that they did not investigate Plaintiff's allegation of harassment.

The Sixth Circuit has stated, in dicta, that "failure to investigate a complaint can constitute an act of retaliation under some circumstances—for example, 'if the failure is in retaliation for some separate, protected act by the plaintiff,' apart from the uninvestigated complaint itself." *Seone-Vazquez v. Ohio State University*, 577 F. App'x 418, 432 (6th Cir. 2014) (quoting *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 722 (2d Cir. 2010)).  A reasonable employee might well refrain from bringing a particular complaint if she knew that doing so would result in her employer ignoring her future complaint of harassment.  Thus, the failure to investigate Plaintiff's complaint of harassment is "materially adverse."

## III.   Causation

As explained in the previous sections, Plaintiff has produced admissible evidence of one materially adverse action: Defendant's failure to investigate her

November 2013 allegation that she had been harassed in retaliation for her January 2013 presentation.  Defendant's motion does not address the cause of its failure to investigate Plaintiff's complaint.  Accordingly, the Court will deny the motion without prejudice to the extent that Plaintiff's claims are based on Defendant's failure to investigate her complaint.  Defendant may file a renewed motion for summary judgment if it chooses.  The Court will set a deadline for such a renewed motion after the expiration of the parties' opportunity under the Local Rules to move for reconsideration of this Order.

CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment [30] is **DENIED WITHOUT PREJUDICE** to the extent that Plaintiff's claims are based on Defendant's failure to investigate her November 2013 complaint of harassment, and otherwise **GRANTED**.  The Court will set a deadline for a renewed motion for summary judgment after the expiration of the parties' opportunity under the Local Rules to move for reconsideration of this Order.

**SO ORDERED**.

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge

Dated: August 9, 2016